IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| CLEVELAND BANQUETS, LLC, *et al.*, | ) | CASE NO.: 1:11 CV 1253 |
| | ) | |
|       Plaintiffs, | ) | |
| | ) | |
| v. | ) | JUDGE DONALD C. NUGENT |
| | ) | |
| CLEVELAND FINANCIAL | ) | |
| ASSOCIATES, LLC,  *et al.,* | ) | |
| | ) | |
|       Defendants. | ) | <u>MEMORANDUM OPINION</u> |
| | ) | <u>AND ORDER</u> |
| | ) | |

      This matter is before the Court on Defendants' Combined Motion for Summary Judgment

and Motion to Dismiss. (ECF #4).  Plaintiffs filed a Brief in Opposition to Defendants motion,

and Defendants filed a Reply in Support of their position.  (ECF #20, 21).  Subsequently, the

Court ordered the parties to submit a statement of additional facts regarding the disposition of a

related state court action.  (ECF # 25).  The Parties failed to agree on a stipulated statement of

facts, however each submitted their own statement of facts in response to the Court's Order.

(ECF #26, 27).  After careful consideration of the briefs and relevant law, and a review of the

relevant filings and proceedings in the corresponding state action, this Court finds that

Defendant's Motion should be GRANTED in part and DENIED in part.


## **BACKGROUND**[1]

Plaintiffs provided catering, banquet and other food services to tenants, employees and visitors at 200 Public Square, Cleveland, Ohio f/k/a the BP Tower ("200 Public Square), pursuant to a Management Agreement entered into in 2002, between Plaintiff, Cleveland Banquets, LLC and then owner of the building EOP-BP Tower, LLC.  The Agreement gave Plaintiffs a license to use space in the building as well as existing equipment, and an exclusive right to provide food, catering and banquet services withing the building.  In exchange, Plaintiffs were to pay $500.00 per month in rent and a percentage of the gross realized sales, after sales exceeded two million dollars.   In 2003, Cleveland Banquets, LLC licensed some of the rights under the Agreement to Plaintiffs Dine on Nine, LLC and Frank & Paulys Banquets, LLC. Between June of 2002 and June of 2005 the Plaintiffs never achieved gross realized sales in excess of two million dollars.

In June of 2005, Defendant Cleveland Financial Assistants acquired the building and hired Defendant Harbor Group Management Company to operate the building.  Plaintiffs claim that upon purchasing the building, Defendants began a campaign to undermine Plaintiffs' business and interfere with their rights under the Agreement.  Further, Defendants brought suit against Plaintiffs in an attempt to void their option rights, however the Court found in favor of

---

[1]

 The facts set forth in this section are taken either from facts agreed upon by the parties or from judicial records in the related state court action.  Any facts not already agreed upon or established in a prior proceeding are taken from the Plaintiff's Complaint and are accepted as true for purposes of this opinion only.

the Plaintiffs in that case.  Thereafter, Defendants alleged that Plaintiffs breached the

Management Agreement, and commenced a forcible entry and detainer action against Plaintiffs

in the Cleveland Municipal Court.  That action was filed on September 25, 2008.  Plaintiffs

subsequently filed this action in the Cuyahoga County Court of Common Pleas on October 14,

2008, claiming breaches of contract against Defendants.  Defendants removed the Cuyahoga

County case to this federal court on the basis of diversity.  At the case management conference

in this action, the Magistrate and both parties agreed that the resolution of the Cleveland

Municipal case could have a substantial impact on the claims in this action and agreed to stay

prosecution of this case until after the Cleveland Municipal Court had ruled on the issues before

it.

      In the Cleveland Municipal Court, the Defendants in this case raised claims of breach of

contract and brought an action for forcible entry and detainer.  These two issues were bifurcated

by agreement of the Court and the parties.  The Municipal Court made a determination that the

Management Agreement gave Plaintiffs a license to use the property, but did not confer a

possessory interest in the building to the Plaintiffs.  The Municipal Court, therefore, found that

Plaintiffs could legally be evicted from the premises.  That court specifically held, however, that

this ruling in no way addressed the breach of contract claims, and specifically noted that

although Defendants could evict Plaintiffs under the property laws, it was still possible that an

eviction could constitute a breach of the Management Agreement.

      The breach of contract claim brought in that action by the Defendants was never

addressed.  Both parties appear to have agreed and to have informed the Municipal Court that it

was unnecessary to address the contract issues in that Court because those claims would be

-3-

addressed by this Court in the current action.  Further, Defendants themselves requested that the

Municipal Court dismiss their contract claims without prejudice and close the action in that

Court.  The Municipal Court complied with Defendants' request.

Defendants now claim that Plaintiffs' current claims should be dismissed under the

doctrine of res judicata, as time barred, or for otherwise failing to state a claim upon which relief

may be granted.


**LEGAL STANDARD**

Defendants seek dismissal of Plaintiffs claims under both the summary judgment

standard of Fed. R. Civ. Pro. 56, and the dismissal standard of Fed. R. Civ. Pro. 12(b)(6).  Under

Fed. R. Civ. Pro. 56, summary judgment is appropriate if

> the pleadings, depositions, answers to interrogatories, written admissions,
> affidavits, transcripts of evidence in the pending case, and written stipulations of
> fact, if any, timely filed in the action show that there is no genuine issue as to any
> material fact and that the moving party is entitled to judgment as a matter of law.

Fed. R. Civ. P. 56.  When reviewing the evidence, the court must draw all reasonable inferences

in favor of the non-moving party.  *Browning v. Levy*, 283 F.3d 761, 769 (6th Cir. 2002).  The

court should not weigh the evidence or determine credibility, during this process, but rather

should consider only whether or not reasonable minds could differ as to the conclusion to be

drawn from the evidence presented.  *See Anderson v. Liberty Lobby, Inc*., 477 U.S. 242, 255

(1986).

Under Fed. R. Civ. Pro. 12(b)(6), the court must construe the Complaint in the light most

favorable to the plaintiff, accepting the factual allegations as true and drawing all reasonable

inferences in favor of the plaintiff.  *Bassett v. NCAA*, 528 F.3d 426, 430 (6th Cir. 2008).  The

factual allegations must assert facts that would raise the right to relief above a purely speculative

level.  *Id.*


## ANALYSIS

The Complaint in this case sets forth seven causes of action: (1) breach of contract

(Management Agreement); (2) bad faith breach of contract (Management Agreement); (3)

promissory estoppel (promise to extend the Management Agreement); (4) unjust enrichment

(Building Improvements); (5) tortious interference with prospective business relationships; (6)

conspiracy; and, (7) defamation.


A. Res Judicata

First and foremost, Defendants contend that all of Plaintiffs claims should be barred

under the principle of *res judicata*.  They argue that Plaintiffs should have raised any claims they

now assert as counterclaims in the Cleveland Municipal Court in case No. 08-24377.  Further,

they contend that the Municipal Court's judgment addressed both the Defendants right to retake

possession of the premises at 200 Public Square and the termination of the Management

Agreement.

*Res judicata* is a broad term that encompasses two specific concepts: claim preclusion

and issue preclusion.  Under these principles, a plaintiff is barred from litigating any claims or

issues arising out of a transaction or occurrence that were the subject of the judgment in a

previously decided action.  *Fort Frye Teachers Ass'n v. State Empl. Rels. Bd.*, 81 Ohio St.3d

392, 395 (1998). More specifically, under Ohio law, claim preclusion bars the litigation of a claim that could have been, but was not raised in the previous suit. *O'Nesti v. DeBartolo Realty Corp.*, 113 Ohio St.3d 59, 61 (2007). Issue preclusion precludes the re-litigation of any issue that was actually and necessarily litigated and decided in a prior action, even if the issue arose under a different cause of action in the first action. *State ex rel. Nickoli v. Erie MetroParks*, 124 Ohio St.3d 449, ¶2 (2010).

To prevail on a defense of *res judicata* under either claim preclusion or issue preclusion, a party must demonstrate four elements:

> (1) that there was a valid, prior judgment rendered on the merits without fraud or collusion by a court of competent jurisdiction;
> (2) that the second action involved the same parties as the first action;
> (3) that the present action raises claims that were or should have been litigated in the prior action; and,
> (4) that both actions arise out of the same transaction or occurrence.

*Reasoner v. City of Columbus*, 2005 Ohio 468, ¶5 (2005) (citing *Grava v. Parkman*, 73 Ohio St.3d 379 (1995).

There is a valid prior judgment by the Cleveland Municipal Court, finding that the Management Agreement was not a lease, but was a contract that encompassed a license. The license within the Management Agreement did not transfer a possessory interest in the property to Cleveland Banquets, LLC, but did permit them to use the space for a specific purpose (i.e. to manage and operate a food services business). The Municipal Court also determined that the license was revocable under Ohio law because it was not permanent and did not create a property interest, and that Defendants had terminated the revocable license.

The Municipal Court, however, did not make any rulings with regard to the Management Agreement or other promises that did not directly relate to the existence or termination of the

-6-

license contained within the Management Agreement. The court specifically stated that although

its decision to allow revocation of the license was required under the property laws of Ohio, it

would not necessarily exempt Cleveland Financial from liability under the contractual terms of

the Management Agreement (or by inference from the terms of any other agreement or promise)

if, in fact, it decided to enforce these property rights. The Municipal Court did not determine

whether the exercise of rights under the property laws would constitute a breach of contract

under the Management Agreement in this particular case, nor did it address whether the

termination of the Management Agreement as a whole was proper. The Municipal Court limited

its judgment in the following manner.

> The decision is difficult because the Court, honoring the summary nature of
> forcible entry and detainer proceeding, rules only on the issue of possession.
> Plaintiff [Defendants in this case] has a right of present possession. What it
> chooses to do with that right – whether it chooses to enforce its judgment for
> possession – and whether such enforcement is to its benefit or peril in terms of its
> contractual responsibilities under the Management Agreement, is a matter of
> future conduct not presently before this Court.

(ECF #4-1 at 8; 4-2). In addition to explicitly exempting any question as to whether the

Plaintiffs' eviction might constitute a breach of the Management Agreement, the Municipal

Court refrained from addressing Cleveland Financial's own claims for breach of contract, or any

other aspect with regard to the termination of the Management Agreement. As outlined in

Defendants' Statement Regarding the Breach of Contract Claims Before the Cleveland

Municipal Court Housing Division (ECF #26), the Cleveland Municipal Court did not enter

judgment on Cleveland Financial's breach of contract claim. Throughout the course of the

forcible entry and detainer action, both parties had represented that the breach of contract

claim(s) would be addressed in this action, and after the issue of possession was resolved by the

-7-

Municipal Court, Cleveland Financial (Defendant in this case) moved that court to dismiss its breach of contract claim without prejudice. The Municipal Court granted Cleveland Financial's motion and dismissed the breach of contract claim without prejudice and terminated the case.

Because the Municipal Court specifically refrained from addressing any breach of contract claims or issues, and because Cleveland Financial voluntarily sought a dismissal of its breach of contract claims without prejudice, this Court finds that there has been no valid prior judgment on the claims or issues arising from any alleged breach of the Management Agreement. The claims raised by Plaintiffs in this action were not compulsory counterclaims to the forcible entry and detainer claim that was decided by the Municipal Court. Their breach of contract claims did not, at that time, arise from a breach of the license contained in the Management Agreement. Further, until after their eviction, which occurred after the final judgment in the Municipal Court case, they would not have had standing to allege a breach of contract arising from the termination of the license within the Management Agreement. As noted by the magistrate in the Municipal Court, whether Cleveland Financial chose to enforce their right to possession, and whether that was contractually permitted by the Management Agreement, was a matter of future conduct. Plaintiffs breach of contract and other claims were not litigated during the forcible entry and detainer proceedings addressing the first claim in Cleveland Financial's prior action, nor should they have been.

Whether Plaintiffs in this action should have raised their claims as compulsory counterclaims to Cleveland Financial's second claim for breach of contract is no longer of any relevance. Once Cleveland Financial sought and obtained a dismissal without prejudice on that claim, there could be no res judicata on claims or issues that would have arisen had the claim

actually been litigated.   There was no final valid judgment on Cleveland Financial's second claim for breach of contract.  Therefore, even if Plaintiffs' current claims may have arisen from the same transaction or occurrence as did Cleveland Financial's second claim in the municipal court action, there was no prior judgment on those issues.  Therefore, the elements of res judicata cannot be met with regard to those claims.  The analysis may have been different if the Municipal Court had dismissed Cleveland Financial's second claim with prejudice, however, a party may not reserve the right to re-raise an issue following dismissal, and at the same time preclude their opponent from later raising related claims or issues.   Further, because the court and both parties had apparently agreed to stay the breach of contract claim pending the resolution of the issue of immediate possession, and because that claim was thereafter dismissed without prejudice, it would be patently unfair to punish Plaintiffs for not attempting to timely raise its breach of contract claims in the previous action.  Had Cleveland Financial not dismissed its breach of contract claim, Plaintiffs may well have sought to amend their answer and add counterclaims relating to the breach of contract allegations and any new claims that arose after Cleveland Financial evicted them from 200 Public Square.

Therefore, the claims brought by Plaintiff in this action were clearly not litigated in the prior action, nor, considering the procedural history of the prior action, can it be said that these claims should have been litigated in the prior action.  Under the circumstances, Defendants cannot satisfy all of the elements of their  *res judicata* defense and Plaintiffs claims will not be dismissed on this basis.


B.  Defamation Claim

Plaintiffs have voluntarily abandoned their defamation claim.  Count Seven of the Complaint, therefore, is dismissed with prejudice.

C.  Failure to State a Claim Upon Which Relief May be Granted

    1.  Count Two: Bad Faith Breach of Contract

Ohio law does not generally recognize a claim for bad faith in a breach of contract action. *See, e.g., Ketcham v. Miller*, 104 Ohio St. 372, 377 (1922); *Cincinnati Gas & Elec. Co. v. General Elec. Co.*, 656 F.Supp. 49 (S.D. Ohio, 1986).  Ohio has recognized a claim for bad faith in the context of insurance carriers.  This exception does not apply in this case.  Plaintiffs contend that an exception is also sometimes made when the contract creates a special relationship between the parties.  *Pappas v. Ippolito*, 177 Ohio App.3d 625 (2008).  In *Pappas*, the court found that the implied covenant of good faith and fair dealing may create a secondary cause of action where the language of the contract evidences a special relationship between the contracting parties.

Plaintiffs argue that the Management Agreement at issue in this creates a special relationship because it states that the Operator shall operate the food services "for" the client in the building.  This language does not create a special relationship or impose a higher than normal duty on the parties to this transaction.  Every service contract involves the provision of services for a client, and often serves to relieve the client of a certain responsibility by hiring the operator or service provider to take on the task in their place.  This typical service relationship is all that is created by the language of the Management Agreement.  There is absolutely no evidence of any relationship between the parties that goes beyond an arm's length, business relationship.

-10-

Plaintiffs' claim for bad faith breach of contract must, therefore, be dismissed.

　　　2.　Count Five: Tortious Interference with Prospective Business Relationships

　　　To state a claim for tortious interference with a prospective business relationship, Plaintiffs must properly allege (1) the existence of the prospect of a business relationship; (2) the Defendants' knowledge of the Plaintiffs' prospective relationships; (3) the Defendants' intentional and material interference with the Plaintiffs' prospective relationships; (4) the lack of justification; (5) a showing that, but for the interference, the Plaintiffs would have consummated the prospective relationships; and, (6) resulting damages. *Castle Hill Holdings, LLC v. A1 hut, Inc.*, 2006 Ohio 1353 (8th Dist., March 23, 2006), ¶50.　Plaintiffs Complaint alleges that Defendants knowingly took a variety of actions, including but not limited to removing signage, preventing customers from accessing the food service area, refusing to provide information regarding tenant use of conference rooms and publishing derogatory statements, that was intended to discourage or prevent customers from utilizing Plaintiffs' services.　The Complaint further alleges that these actions had no justification contractually or otherwise, that the actions were improper considering the relationship between the parties, and that absent such actions or interference, Plaintiffs would have consummated additional business relationships.

　　　Plaintiffs' Complaint clearly puts Defendants on notice of the nature of the claim being raised, and alleges sufficient facts to support the elements of their claim.　Although, as argued by Defendants, some of the facts alleged in support of Plaintiffs' tortious interference claim also support their claims for breach of contract, this does not warrant a dismissal of either claim. Defendants have cited no law that would require a dismissal based solely on the existence of an overlapping factual basis between the claims.

-11-

3.  <u>Count Six: Conspiracy</u>

Defendants argue that Plaintiffs' conspiracy claim does not satisfy the pleading standards under the federal rules and should be dismissed.  Civil conspiracy is defined under Ohio law as "a malicious combination of two or more persons to injure another in person or property, in a way not competent for one alone, resulting in actual damages."  *Kenty v. Transamerica Premium Ins. Co.*, 72 Ohio St.3d 415, 419 (1995).  A malicious combination may be proven if the factual allegations support a finding that the conspiring parties "in any manner come to a mutual understanding that they will accomplish the unlawful design."  *Pumphrey v. Quillen*, 102 Ohio App. 173, 177-178 (1955).  The element of malice may be implied or inferred from the acts undertaken and is defined as "that state of mind under which a person does a wrongful act purposely, without a reasonable or lawful excuse, to the injury of another."  *Pickle v. Swinehart*, 170 Ohio St. 441, 443 (1960).  Plaintiffs have identified a myriad of acts allegedly undertaken by the Defendants in combination, with the common goal of harming Plaintiffs' business and bullying them into terminating the Management Agreement.  The Complaint identifies dates for these alleged actions, and the acts alleged imply the requisite level of malice to state a claim for conspiracy.  Plaintiffs' claim for conspiracy meets the minimum requirements to overcome a motion to dismiss for failure to state a claim or for failure to plead the claim with the necessary particularity.

## **CONCLUSION**

For the reasons set forth above Defendants' Combined Motion for Summary Judgment and Motion to Dismiss is GRANTED in part and DENIED in part.   Counts Two and Seven of the

Complaint are dismissed with prejudice.  Counts One, and Three through Six remain to be tried.  The next status conference has been set for January 18, 2012 at 9:00 a.m., and the discovery cut-off remains January 31, 2012.  IT IS SO ORDERED.


       /s/ Donald C. Nugent    
DONALD C. NUGENT
United States District Judge


DATED:   November 29, 2011   

-13-